UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED IN OPEN COURT
3.10.2025
CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA

v. CASE NO. 3:24-cr-194-MMH-SJH

BRIAN GREGORY BRIGHTMAN
a/k/a "B"

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Sara C. Sweeney, Acting United States Attorney for the Middle District of Florida, and the defendant, BRIAN GREGORY BRIGHTMAN, also known as "B," and the attorney for the defendant, Curtis S. Fallgatter, Esq., and George T. Fallis, mutually agree as follows:

5/20/25 MMH

**A. Particularized Terms**

1. Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment, which charges the defendant with conspiracy to distribute, ~~and possess with intent to distribute~~ controlled substances, including 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

2. Mandatory Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum sentence of 10 years' imprisonment and a maximum of life imprisonment, or both imprisonment and a

fine of not more than $10,000,000, a term of supervised release of not less than five years, and a mandatory special assessment of $100 due on the date of sentencing. A violation of the terms and conditions of supervised release carries a maximum sentence of not more than five years' imprisonment, as well as the possibility of an additional term of supervised release.

3. *Alleyne v. United States* and *Apprendi v. New Jersey*

As to Count One, under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant is subject to a mandatory minimum sentence of 10 years' imprisonment and a maximum sentence of life imprisonment because the following facts have been admitted by the defendant and are established by this plea of guilty: the conspiracy involved 50 grams or more of actual methamphetamine.

4. Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

One: two or more people in some way agreed to try to accomplish a shared and unlawful plan ~~to possess with intent to distribute or~~ to distribute controlled substances;

Two: the defendant knew the unlawful purpose of the plan and willfully joined in it; and

Three: an object of the unlawful plan was ~~to possess with intent to distribute or~~ to distribute 50 grams or more of actual

methamphetamine.

5. Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Three through Eight and Ten will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely

with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7. Cooperation - Substantial Assistance to Be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida,

warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

The defendant acknowledges that he has yet to substantially assist the United States. Based on the defendant's agreement to cooperate in the particular manner set forth herein, the United States will not file an information under 21 U.S.C. § 851.

8. Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

9. Cooperation - Responsibilities of Parties

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant

understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury,

and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recission of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3) The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4) The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5) The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has

pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

10. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be judicially forfeited specifically include, but are not limited to the following: a Glock firearm .40 caliber-BWEL369; Smith & Wesson .380 MP bodyguard pistol; Radical Firearms AR-15; 9 mm Sig Sauer pistol; and associated ammunition, which were seized on or about September 11, 2024, because these assets facilitated the charged drug conspiracy

The defendant further agrees to the administrative forfeiture of a 10K Yellow Gold Curb Chain Necklace seized from the defendant on or about January 19, 2023, as it was purchased with proceeds obtained from selling controlled substances, in violation of Title 21. The defendant agrees that this provision provides him with actual notice of the administrative forfeiture of this asset, and waives the right to receive notice of any subsequent administrative forfeiture of this asset.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any

forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the

defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment, and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing

Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions

between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby

be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 26 day of February, 2025.

SARAH C. SWEENEY
Acting United States Attorney

BRIAN GREGORY BRIGHTMAN
Defendant

RACHEL LASRY
Assistant United States Attorney

CURTIS S. FALLGATTER, ESQ.
Attorney for Defendant

MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division

George T. Fallgatter MMH 5/20/25

Brian Brightman 5/20/25 MMH

Rachel Lasry
Assistant United States Attorney 5/20/25 MMH

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 3:24-cr-194-MMH-SJH

BRIAN GREGORY BRIGHTMAN
a/k/a "B,"

**PERSONALIZATION OF ELEMENTS**

**As to Count One:**

1. Do you admit that beginning on an unknown date, but no later than July 7, 2024, and continuing through September 11, 2024, in the Middle District of Florida, you and at least one other person, including Brandon Baden, Crystal Dawn Moore, Treyvon Tykese McCray, Trey Allan King, and an individual with the initials A.D., agreed to try to accomplish a shared and unlawful plan ~~to possess with intent to distribute and~~ to distribute controlled substances, including methamphetamine? BB BB KL

2. Do you admit that you knew the unlawful purpose of the plan and agreed to willfully join in it? KL

3. Do you admit that an object of the unlawful plan was ~~to possess with the intent to distribute and~~ to distribute 50 grams or more of actual methamphetamine, a Schedule II controlled substance? BB

Defendant's Initials BB

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 3:24-cr-194-~~SJH~~-MMH-SJH

BRIAN GREGORY BRIGHTMAN
a/k/a "B"

**FACTUAL BASIS**

Beginning no later than July 7, 2024 and continuing through on or about September 11, 2024, the defendant, Brian Gregory Brightman, also known as "B," a convicted felon, orchestrated and led a drug trafficking organization in Jacksonville, Florida. In so doing, he conspired with others, including a person with the initials A.D., Brandon Baden, Crystal Dawn Moore, Trey Allan King, and others, to possess with intent to distribute and to distribute controlled substances, including methamphetamine, fentanyl, cocaine, and marijuana in Jacksonville, Florida.

During that general period, a Drug Enforcement Administration (DEA) confidential source (or CS) made controlled purchases of both marijuana and methamphetamine from Brightman and other members of the conspiracy at different locations in Jacksonville that were operated and staffed by Brightman. DEA's investigation revealed that Brightman went to great lengths to avoid transferring the drugs personally. Instead he arranged for the delivery of drugs by co-conspirators to the CS as well to his numerous trap houses around Jacksonville. At those locations,

drugs were then sold by midlevel distributors, including Baden, Moore, King, and McCray. The investigation further revealed that Brightman supplied, staffed, directed, and profited from the sale of drugs at trap houses near New Berlin Road, Spaulding Road, Fields Road, Main Street, West 16th Street, and Pitts Road. Further, Brightman purchased a camper, which he then arranged for midlevel dealers, including King, Moore, and Baden, to sell drugs from.

During the time relevant to the conspiracy, he was on pretrial release for charges in the Fourth Judicial Circuit in and for Duval County Florida, including being a felon in possession of a weapon. As part of his release conditions, he wore an ankle monitor that tracked his location. A review of those geographic data points revealed that he was making frequent and short stops at trap houses, including those described below, which is consistent with drug trafficking activity. Further, Brightman consistently rented and drove different rental vehicles, which is also consistent with drug trafficking activity.

The CS bought approximately 1055.1 grams of actual methamphetamine from the members of the conspiracy run by Brightman between July 18, 2024 and August 14, 2024. On the dates that follow, the CS contacted Brightman, and Brightman arranged for midlevel distributors to sell drugs to the CS in the approximate amounts and purities listed:

- July 18, 2024 –106.9 grams of methamphetamine at 99 percent purity for an amount of pure substance of 105.8 grams;

- July 24, 2024 (first transaction that day)—137.1 grams of methamphetamine at a substance purity of 99 percent for an amount pure substance of 135.7 grams;

- July 24, 2024 (second transaction)—277.6 grams of methamphetamine at a substance purity of 97 percent for an amount pure substance of 269.2 grams;

- July 30, 2024—140.2 grams of methamphetamine with a substance purity of 86 percent for an amount pure substance of 120.5 grams;

- August 7, 2024—256 grams of methamphetamine with a substance purity of 93 percent for an amount pure substance of 238 grams;

- August 9, 2024—(first transaction that day) 27.8 grams of marijuana;

- August 9, 2024— (second transaction) 13.9 grams of methamphetamine with a substance purity of 97 percent for an amount pure substance of 13.4 grams;

- August 14, 2024—(first transaction that day) 56 grams of methamphetamine with a substance purity of 94 percent for an amount pure substance of 52.6 grams; and

- August 14, 2024 (second transaction)—130.7 grams of methamphetamine with a substance purity of 89 percent for an amount pure substance of 116.3 grams;

Video footage from the controlled buys and intelligence gathered from conducting surveillance established that Brightman owned the camper referenced above, which he had parked on Fields Road from as late as approximately August 7, 2024 to August 31, 2024. Brightman arranged for King, Baden, and other members of the conspiracy to sell drugs from that location. During this time frame, law-enforcement officers observed that there was a steady flow of foot and vehicle traffic at all hours of the day and night to the Fields Road residence and the camper. Brightman planned to move the camper every 30 days to evade detection by law

enforcement, and, at the beginning of September, moved the camper to a location near Spaulding Road, with the help of an individual with the initials A.D.

During the conspiracy, Brightman directed the sale of crack cocaine, marijuana, fentanyl, and methamphetamine; he or an associate, including A.D., would pick up the cash proceeds from these drug sales from the trap house locations, including on Pitts Road and Main Street on a near daily basis. Brightman dropped off approximately one pound of methamphetamine, an ounce of fentanyl, and crack cocaine each day for co-conspirators to sell from the Pitts Road location where the camper was parked. The Main Street and Pitts Road trap houses, conservatively estimated, each would sell approximately $3,000 worth of methamphetamine and fentanyl per day. The investigation has revealed that at times, Brightman had at least five trap houses operating simultaneously.

On September 11, 2024, federal agents executed eight lawfully obtained search warrants at trap houses and other locations associated with Brightman. He was also arrested on that date. Indicia of drug distribution, including scales, mixing bowls, baggies, whisks, and cutting agents were found across the locations. Drugs and four firearms were seized during the execution of the search warrants from trap houses run by Brightman or locations associated with Brightman:

1. Clapboard Creek location: 15 tablets of oxycodone;10.6 grams of MDMA;
2. Hickory Oak Drive location (place of Brightman's arrest): 59.8 grams of fentanyl; a Glock firearm .40 caliber- BWEL369 in a vehicle in the driveway of the home purchased by Brightman's girlfriend;

3. West 16th Street location: A Smith & Wesson .380 MP bodyguard pistol; a Radical Firearms AR-15 with 30 rounds of ammunition; 4.18 grams of marijuana, 10.32 grams of cocaine; 10 tablets of oxycodone; 20.99 grams of marijuana;
4. Main Street location: Approximately 4.76 grams of methamphetamine at a substance purity of 97 percent for an amount of pure substance of 4.61 grams.

5. Fields Road location: Approximately 0.78 grams of methamphetamine at 99 percent purity for an amount of pure substance of 0.77 grams;

6. Camper and Spaulding Road location: 13.58 grams of methamphetamine at 100 percent purity for an amount pure substance of 13.58 grams; 2.16 grams of fentanyl; capsules used as a means to distribute fentanyl; 4.21 grams of cocaine; a 9 mm Sig Sauer pistol.

Notably, on September 10, 2024, Brightman's last stop before arriving at Hickory Oak Drive (where he was arrested) was the location on the Spaulding Road (from 10:32 p.m. to 11:01 p.m., according to Brightman's GPS records) where the camper was parked, and the gun was found.

Brightman had three cellphones on him at the time of his arrest. The cellphones had indicia, photographs, and messaging indicating that Brightman was the leader of a drug trafficking organization, confirming the facts outlined above. One of the cellphones bore the same number that the CS used to contact Brightman during the controlled buys.