**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**UNITED STATES OF AMERICA**

vs. Case No.: 3:24-CR-194-MMH-SJH

**TREY ALLAN KING**

---

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, TREY ALLAN KING, by and through his undersigned counsel, hereby files this memorandum of law for the Court's consideration at the sentencing hearing in this case, and states the following:

## MEMORANDUM OF LAW

The Supreme Court in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738. 755 (2005) made the federal sentencing guidelines advisory and thus drastically changed the way a district court conducts a sentencing hearing. After *Booker*, sentencing requires two steps. First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines, including adjustments and departures called for under the guidelines. *Gall v. United States*, 128 S. Ct. 586, 596, 169 L.Ed.2d 445 (2007), *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). Second, the district court must give each side the opportunity to argue for whatever sentence they deem appropriate and then must consider the statutory factors of 18 U.S.C. § 3553(a). The sentencing court may not presume that the Guidelines range is reasonable. *Gall*, 128 S. Ct. at 596-597.

"It has been uniformed and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the

human failings that sometimes mitigate, sometimes magnify the crime and the punishment to ensue." *Gall v. United States*, 128 S. Ct. 586, 598 (2007) (citing *Koon v. United States*, 518 U.S. 81, 113, 116, S. Ct. 2035, 135 L.Ed.2d 392 (1996)).

In determining the reasonable sentence which satisfies the purposes of sentencing, the Defendant asks the court to consider the following:

1. **BACKGROUND**

A. **THE NATURE & CIRCUMSTANCES OF THE OFFENSE.**

The defendant plead guilty via a Notice of Maximum Penalties, to Count I-Conspiracy to distribute controlled substance, including 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. sections 846 and 841 (b)(1) and Count VI to distribution of a controlled substance a violation involving 50 grams or more of actual methamphetamine in violation of 21 U.S.C. sections 841(a)(1), 841(b)(1)(A) and 18 U.S.C. section 2.

B. **HISTORY AND CHARACTERISTICS OF DEFENDANT**

1. **Early Childhood**. The defendant was raised in a good family. The defendant had a solid and nurturing family background. His father works for the Jacksonville Sheriff Office; his mother works for Florida Blue, his younger brother is a Jacksonville fire fighter, his older brother is a therapist and his sister-in-law is an assistant state attorney.

2. **Summary of Good Character Letters**

The good character letters are attached to the Defense's response to the PSR. A summary of said letters are as follows:

(a) Keeshaun King (brother of Trey King) wrote "Trey is a passionate and deeply caring individual. He has always been someone who puts the need of others before his own and stands up for those who cannot stand up for themselves. He is protective of his

family, supportive of his friends and consistently tries to do what is right even in difficult circumstances."

**(b)** Patronda Robertson (aunt of Trey King) wrote "We have seen firsthand the remorse he feels and the genuine desire he has, to turn his life around." "He has expressed to all of us that he wants to be a better father, son, brother and man. He understands that redemption comes through hard work, accountability and change and he is prepared to do just that. I believe that, if given the opportunity, Trey will use this difficult chapter as a turning point in his life."

**(c)** Derrica Curtis (family member of Trey King) wrote "I could speak endlessly about Trey's positive qualities, but I'll highlight two that stand out the most to me. First, his ability to relate to others, Trey embraces the idea that we are all human-flawed, growing, and constantly evolving. He creates a safe and welcoming space that makes others feel seen and accepted just as they are. Second, Trey has an incredible ability to show up for others especially when they're struggling."

**(d)** Domonique Jackson (sister of Trey King) wrote "Prior to his mistake he was going to merchant seaman school and nearly finished." "Prior to this imprisonment he was a consistent and positive presence in his daughter's life."

**(e)** Bettye Gavin (grand-mother to Trey King) "As his grandmother I am assured that Trey is remorseful and ashamed of what he is putting family through during our conversations."

**(f)** Karen Scruggs (aunt to Trey King) wrote "Trey made one bad choice that landed him before you but I believe God gives us chance for Trey Allen King. "I know this has given him a wakeup call…"

(g) Renique Henry (friend of Trey King) "I truly love Trey like my own family and can vouch that he is truly a hardworking, supportive and dedicated individual!

(h) Kimberly Johnson (aunt of Trey King) wrote "I know my nephew feels horrible for putting himself as well as his parents in a position of having them questioning their parenting skills! Hearing my sister crying and blaming herself breaks our hearts. We all know Trey comes from a family that have so much love for him"

(i) Dana King (aunt of Trey King) wrote "He is very talented in the areas of music, photography and visual arts. He is a person who is very outgoing, vibrant, and adventurous. He is a social butterfly, who know no stranger," "He is a trusting person who believes in people, and on occasion his selection for his inner circle, may no have been his best choice at times…"

(j) William Austin (uncle of Trey King) wrote "Trey is a good young man who made some poor choices, this situation has truly been an eye opener for him.

3. **Education-**The defendant has graduated from high school. Mr. King attended some college at FAMU university. Mr. King relates he was one week away from graduating from training to become a merchant seaman.

4. **Past Criminal History.** The defendant has a minimal criminal history with only one criminal history point.

5. **Family**. The defendant has a strong family support as evidenced by the good character letters above. Mr. King is also the father to a young toddler (2 years old) daughter.

6. **Pre-Trial Release/Detention.** The defendant did well on pre-trial release for 5 months while working two jobs. The defendant violated his pre-trial release by two nights attending a family get together with his mother (third party custodian) and a gender reveal

party of his relative also accompanied by his mother. Mr. King's GPS monitor revealed there was a time during visiting at the relative's home he went to a liquor store nearby. The two nights he visited with family he did this without the approval of his pre-trial services officer and thus violations his pre-trial release occurred. Mr. King was then detained as a result of his order to show cause hearing. Mr. King was on pre-trial release from September 16, 2024 to March 24, 2025. The defendant was in pre-trial detention from September 11, 2024 to September 16, 2024 and from March 24, 2025 to the present.

**2. THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE.**

In this case, there has been a violation of the law. Accordingly, the crime should be punished in some fashion.

**3. THE NEED FOR DETERRENCE & THE NEED TO PROTECT THE PUBLIC**

The defendant has minimal previous criminal record. The defendant has no convictions for prior violent offenses.

**4. THE NEED TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE**

This directive to the Court is difficult to address since it conflicts the instructions given to the Sentencing Commission in 28 U.S.C. § 994(k), which states that the "Commission shall insure that the guidelines reflect the general ***inappropriateness*** of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." (Emphasis added).

**5. SAFETY VALUE.** The defense would respectfully request that safety value be analyzed by the Court during the sentencing hearing. The safety valve provision allows district courts to

sentence defendants convicted of certain drug offenses "without regard to any statutory minimum sentence. 18 U.S.C. section 3553(f). "The intent, clear from the face of the Act, is to provide a 'safety value' so that less culpable offender are not subject to mandatory minimums." *United State v. McFarlane,* 81 F. 3d 1013, 1014 (11th Cir. 1996). A defendant qualifies for safety value relief when five requirements are met. The defendant's guidelines carry a ten-year minimum mandatory. The defendant may be eligible for safety value. Safety Value has 5 requirements below:

1. the defendant does not have-

(a) more than 4 criminal history points, excluding any criminal history points resulting from a one-point offense, as determined under the sentencing guidelines;

(b) a prior 3-point offense as determined under the sentencing guidelines: and

(c) a prior 2-point violent offense, as determined under the sentencing guidelines;

2. the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

3. the offense did not result in death or serious bodily injury to any person;

4. the defendant was not an organizer, leader, manager, or supervisor of others in the offense as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. section 848; AND

5. not later than the time of the sentencing hearing, the defendant has truthfully provide to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the

Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

In *United States v. Maisonet*, at page 8, No. 22-13124, November 5, 2024 (11th Cir) held "When determining whether a defendant should be sentenced under the safety value, a sentencing court must make three assessments. First, it must determine the fact—as relevant hear, a court should ask what information the defendant provided the government and when it was provided. Second a court must determine whether the facts it has found satisfy the statute's legal requirements-as relevant here, whether the defendant's statements to the government were complete and timely. And, third a court must determine whether an eligible defendant should be sentence below the mandatory minimum in the light off the sentencing factors and unique circumstance of his case." See *United Staes v. Miles*, 75 F. 4th 1213, 1224 (11th Cir. 2023) ("district courts may use their discretion to impose sentence that reflect the true fact of an offender's criminal history and personal circumstances, even if they are unaccounted for in the mandatory minimums that would otherwise apply"

**6. THE KINDS OF SENTENCES AVAILABLE**

The sentencing court is bound by the 10-year minimum mandatory if the safety value is not satisfied. The sentencing court is not bound by the guideline chart (if the minimum mandatory is broken) and its division into zones to determine whether a sentence of imprisonment is required or reasonable. Pursuant to 18 U.S.C. § 3582, the court is directed that "in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, the length of the term" it shall "consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting corrections or rehabilitation.

**7. THE NEED TO PROVIDE RESTITUTION TO VICTIMS**

There is no restitution in this case.

**8. THE APPLICABLE SENTENCING GUIDELINES RANGE**

The defendant's advisory guideline range is 108 months to 135 months with a ten-year minimum mandatory in the initial PSR. However, because of the minimum mandatory his statutory minimum mandatory is 120 months to 135 months. The defendant at the time of sentencing will have served approximately 5 months in confinement awaiting sentencing the defense is requesting this Honorable Court grant a Departures and Variances downward for the following reasons:

(a) **The Federal Advisory Guideline Sentence Is Significantly Greater Than Any Prior Sentence Defendant Has Served In The Past.**

The defense would argue that a guideline sentence of 120 months to 135 months is draconian for convictions to Count I and VI. The defendant has a minimal criminal record and thus has never been sentenced to lengthy confinement before his pre-trial confinement on Marach 24, 2025 to September 2, 2025. The defense would make the argument that an advisory guideline (or even a minimum mandatory sentence of 10 years) sentence even if reduced would be much greater than any previous sentence served (since the defendant has a minimal criminal record) received by the defendant. See *United States v. Mishoe,* 241 F.3d 214 (2nd Cir. 2001) when determining whether a departure is warranted, sentencing court may consider the amount of time a defendant previously served compared to the sentencing range called for under the Guidelines.

**(b) The Extreme Remorse Mr. King**

The defense is arguing this variance due the extreme remorse of Mr. King has had because his family has been devasted with his arrest. (please see good character letters of Bettye Gavin, Patronda Roberson, Kimberly Johnson and William Austin that discusses his extreme remorse). Mr. King's actions could have his toddler daughter be a teenager when he is released if he receives a high sentence.

District courts have varied downward based on a defendant's exhibition of remorse. See, e.g. *United States v. Howe*, 543 F. 3d 128 (3d Cir 2008)(affirming downward variance to probationary sentence based in part on a finding of "heartfelt remorse" in Howe's allocution, even though Howe disputed a fraudulent intent at trial and pursed a defense of blaming a third party); *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009) (affirming sentence of one day incarceration plus ten years supervised release in child pornography case where defendant expressed "immediate unconditional remorse" both at time of arrest and throughout this post-arrest mental health treatment); *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008) (imposing twelve months and a day rather than forty-six to fifty-seven month Guideline range for child pornography possession by a defendant in part based on defendant's credible, if obviously "well-coached" expressions of remorse as well as statement from defendant's therapist that he was genuinely remorseful).

**(c) The Employment History**

Mr. King was working two jobs when he was on pre-trial release. Paragraphs 85 to 89 of the PSR reflect that the defendant has tried to obtain steady employment during his life.

A defendant's exemplary work history may also merit a sentencing reduction. (see, e.g. *Gall v. United States*, 552 U.S. 38, 42, 54 (2007) (affirming variant sentence of probation where,

post arrest the defendant obtained a college degree and started his own successful business); *United States v. Jagmohan* 909 F.2d 61 (2d Cir. 1990)(downward departure from 15 to 21 months to probation where defendant had nine years of work history and showed lack of criminal sophistication by using personal check in bribery transaction, painting a picture of a person with a stable background whose involvement was a uncharacteristic mistake); *Untied States v. Big Crow*, 898 F. 2d 1326, 1331-32 (8th Cir. 1990) (upholding downward departure for 23 year old defendant in assault case based on excellent employment record since age 17, despite an unemployment rate of 72% on Indian reservation); *United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (upheld sentence of one year and one day for defendant convicted of possession with intent to distribute 100 grams of heroin with Guideline range of forty-six to fifty-seven months, citing in part defendant's "long and consistent work history" at a legitimate job demonstrated by letters from employers).

**(d) Departures Based on Inadequacy of Criminal History Category as grounds for departure.**

According to section 4A1.3, comment n. (3)(A)(ii) "A downward departure from the defendant's criminal history category may be warranted based on any of the following circumstances: The defendant received one criminal history from a sentence for possession of marihuana for person use, without an intent to sell or distribute it to another person"

Without the one point, King would benefit from the two-level zero-point offender reduction resulting in a total offense level of 29, criminal history category I and an advisory guide line imprisonment range of 87 to 108 months, but because of the statutory minimum mandatory, the range becomes 120 months to 135 months.

## CONCLUSION

*"I HAVE ALWAYS FOUND THAT MERCY BEARS RICHER FRUITS THAN STRICT JUSTICE"*

ABRAHAM LINCOLN, SPEECH IN WASHINGTON D.C., 1865

In *Gall,* the Court quoted from the district court's order which stated that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." 128 S. Ct. at 586. This is just such a case.

The sentencing procedure set forth in Gall necessitates a case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. See *United States v. Martin*, 520 F.2d 87, 91 (1st Cir. 2008).

**LAW OFFICE OF JAMES A. HERNANDEZ**

/s/ James A. Hernandez
**JAMES A. HERNANDEZ, ESQUIRE**
Florida Bar No. 0871303
118 W. Adams St., Ste 500
Jacksonville, FL 32202
Tel. (904) 651-7707
lawjimhernandez@aol.com

**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the Assistant U.S. Attorney, Rachel Lasry, 300 North Hogan Street, Suite 700, Jacksonville, Florida 32202, electronic filing, this 5th day of August 2025.

//S// James A. Hernandez

James A. Hernandez
Attorney for Defendant